IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **Alfa Corporation** )<br>)<br>    **Plaintiff,** )<br>)<br>v. )<br>)<br>**Alpha Warranty Services, Inc.** )<br>)<br>    **Defendant.** ) | Civil Action No. 2:20-cv-00553-MHT<br>                (WO) |

## ORDER ON PRETRIAL HEARING

A pretrial hearing was held by videoconference in this case on June 1, 2023, and June 12, 2023, wherein the following proceedings were held and actions taken:

1. **PARTIES AND TRIAL COUNSEL:**

*Counsel for Plaintiff Alfa Corporation*

BALCH & BINGHAM LLP

G. Lane Knight (AL Bar No. 6748-I72K)
lknight@balch.com
105 Tallapoosa St., Suite 200
Montgomery, Alabama 36104
Telephone: (334) 269-3124

DORSEY & WHITNEY LLP

Juan C. Basombrio (pro hac vice)
basombrio.juan@dorsey.com
600 Anton Boulevard, Suite 2000
Costa Mesa, California 92626
Telephone: (714) 800-1400

Bruce R. Ewing (pro hac vice)
Ewing.Bruce@dorsey.com
51 West 52nd Street
New York, NY 10019-6119
Telephone: (212) 415-9206

1

Ben D. Kappelman (pro hac vice)
kappelman.ben@dorsey.com
50 South Sixth Street. Suite 1500
Minneapolis, Minnesota 55402-1498
Telephone:  (612) 340-2600

*Counsel for Defendant Alpha Warranty Services, Inc.*

LEAK, DOUGLAS & MORANO, PC

Michael J. Douglas (ASB2888C52D)
Joe L. Leak (ASB5124A63J)
mdouglas@leakdouglas.com
jleak@leakdouglas.com
17 20th Street North, Ste. 200
The John Hand Building
Birmingham, Alabama 35203
Telephone:  (205) 977-7099

GILLIS LAW GROUP, PC

H. Lewis Gillis (GIL 011)
Kristen J. Gillis (GIL 078)
hlgillis@gillislawgrouppc.com
kjgillis@gillislawgrouppc.com
1715 West Second Street
Montgomery, Alabama 36106
Telephone:  (334) 270-1033

**COUNSEL APPEARING AT PRETRIAL HEARING:**  (same as trial counsel) or (indicate if different)

*Counsel for Plaintiff*

G. Lane Knight, Bruce R. Ewing, Ben D. Kappelman

*Counsel for Defendant*

Michael Douglas, Joe L. Leak, H. Lewis Gillis, Kristen J. Gillis

2. **JURISDICTION AND VENUE:**

Jurisdiction is proper in this Court pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1332(a), 1338(a), 1367(a).  No jurisdictional questions remain.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

3. **PLEADINGS:**  The following pleadings and amendments were allowed:

Plaintiff's Complaint [Doc 1]

Defendant's Amended Answer [Doc 47]

4. **CONTENTIONS OF THE PARTIES:**

(a) The Plaintiff

This is a trademark infringement action.  Plaintiff Alfa Corp. is a prominent Alabama-based insurance company that offers automobile and many other types of insurance under the mark ALFA.  Defendant Alpha Warranty Services, Inc. offers "vehicle service contracts" ("VSCs") or "after-market warranties" under the confusingly similar mark ALPHA.  ALFA and ALPHA are phonetically identical and visually similar, and insurance and VSCs are often sold by the same companies.  Alpha refuses to stop using the ALPHA mark.  Thus, Alfa asks that the Court enjoin Alpha's infringement of Alfa's trademarks and Alpha's dilution of Alfa's brand, and order the cancellation of Alpha's U.S. trademark registration for ALPHA WARRANTY SERVICES.

The evidence of likelihood of confusion is high.  *See generally* Doc. 75 at 28-48.  Alpha's marketing literature expressly analogizes its automobile warranty products to insurance and states that its products are backed by insurance companies.  *Id.* at 16-18.  Alpha's expert admitted that "vehicle service contracts and automobile insurance are the types of products that can come from the same company," and Alfa's expert testified: "most consumers do not know the distinctions between the products an insurer might offer and a VSC from an entity like Alpha Warranty Services if they effectively do the same thing, such as mechanical coverage for breakdowns."  *Id.* at 14-15, 38.   All of these products are offered to consumers at the point of

sale in an automobile purchase or leasing transaction when consumers are simultaneously considering the purchase of insurance.  *Id.* at 41.

Given the obvious overlap between selling VSCs and auto insurance during the vehicle purchase transaction, it should come as no surprise that there are efforts to sell them together. Early in 2022, Alpha announced that it was attempting to do just that with a nationwide insurance brokerage called Polly Insurance.  *Id.* at 20-21.  Polly Insurance is a Vermont-based insurance broker offering auto and home insurance, among other products.  *Id.* at 20.  Polly works with many insurers, including household names like Nationwide, Progressive, Travelers, and Safeco.  *Id.*  Polly's business model is to encourage consumers to "bundle" their purchase of auto insurance with a new car, that is, buy both at the same time because Polly views "auto insurance as inseparable from the car buying process."  *Id.*  In early 2022, Alpha and Polly announced that they were pursuing a partnership in which a link to Polly's auto insurance sales process would be integrated into Alpha's "Zoom" F&I portal.  *Id.* at 20-21.  An F&I portal is a tool through which dealers can see information about F&I products that might be appropriate for a particular customer.  *Id.*  Some portals, including Alpha's Zoom portal, include customer-facing screens that a dealer can use to sell F&I products.  *Id.*  In other words, when the integration of Polly's insurance sales interface into Alpha's F&I menu is complete, consumers will be able to obtain automobile insurance through Alpha—an obvious infringement of Alfa's ALFA trademarks.  *See id.* at 20-21, 61.

But that is not all.  Alfa's consumer automobile insurance offerings include coverage for roadside assistance (including providing mechanical assistance to vehicles).  *Id.* at 6.  Alfa's customer service representatives also offer third party major mechanical insurance in conjunction with auto loans (which, as admitted by multiple witnesses, are competitors with VSCs).  *Id.* at 6,

43. Moreover, Alfa has considered offering its own automobile warranty product, given its obvious proximity to the insurance products Alfa sells, and thus Alfa considers warranties to be a natural and potential zone for business expansion (many insurance companies offer both automobile insurance and VSCs or similar products, including Allstate, GEICO, and State Farm). *Id.* at 7, 14.

Widespread consumer complaints on the internet indicate that Alpha is disreputable. Consumers have referred to Alpha as "crooks" and "thieves" whose VSCs are "an absolute waste of money." *Id.* at 25. An Alabama auto dealer that had sold Alpha's VSCs in the past testified via deposition that he came to believe that "the company was crap." *Id.* at 24-25. Consumers have actually confused Alpha's VSCs with insurance, labeling Alpha "[j]ust another terrible insurance company." *Id.* at 25. This confusion and vitriol against Alpha damages Alfa's good name and reputation, built over decades of faithful service to its customers and community in Alabama and other states.

On October 14, 2016, Alfa's counsel wrote to Alpha demanding that Alpha cease and desist its wrongful conduct. *Id.* at 25. Alfa indicated to Alpha that it had recently come to its attention that Alpha was seeking to obtain a federal registration for an ALPHA trademark. *Id.* Alfa cited its own federal trademark registrations for ALFA and asserted that Alpha's actions are likely to cause consumer confusion with the ALFA marks, and demanded that Alpha cease and desist from using the ALPHA mark. *Id.*

Alpha's general counsel testified that he received Alfa's cease-and-desist letter. *Id.* He claims he "did some research" and investigated whether Alpha was infringing Alfa's trademarks as stated in the letter. *Id.* He did not document or otherwise commit his conclusions to writing. *Id.* He chose not to respond to the cease-and-desist letter for "[a] lot of reasons," including that

he believed there was "no analysis given" in the letter, that the letter contained "no opportunity or invitation to respond with a contrary point of view," and that he subsequently amended Alpha's pending trademark application, making certain representations to the PTO disclaiming any relationship between Alpha's VSCs and insurance. *Id.* at 21-22.

On May 14, 2018, after becoming concerned that its services were more closely related to Alfa's than its representations to the PTO indicated, Alfa's counsel again wrote to Alpha demanding that Alpha cease and desist its wrongful conduct. *Id.* at 22. Alpha also received but did not respond to Alfa's second letter. *Id.* Alpha's general counsel "talked with [Alpha's] president about it," then "did some more research and made a -- a determination that this was -- this letter was misguided." *Id.* Again, Alpha's general counsel "put nothing in writing." *Id.* at 22-23. He chose not to respond for "similar reasons" as in 2016, including that there was "no opportunity or invitation to respond." *Id.*

In late 2019, Alfa first became suspicious based on Alpha's marketing that Alpha may have been selling warranties in Alabama. *Id.* at 23. However, determining whether Alpha was then operating in Alabama was not easy because Alpha's business model focuses on selling its products through automobile dealers and, in particular, through the dealerships' F&I departments that consumers encounter near the end of the consumer transaction. *Id.*

Alfa therefore hired an investigator to determine if Alpha was offering its products within Alabama. *Id.* In early 2020, Alfa's investigator visited an automobile dealership located in Clanton, Alabama, and discovered that Alpha was, in fact, offering its services in this state. *Id.* Alfa's investigator had to visit four Alabama automobile dealerships before finding one that offered Alpha's products. *Id.* Later in 2020, Alfa's investigator located 16 dealerships that did not offer Alpha's products. *Id.*

6

At trial, Alfa will ask the Court to enter judgment in Alfa's favor on its claims for federal trademark infringement, federal unfair competition, cancellation of Alpha's federal trademark registration, common law trademark infringement, and state law dilution.  Alfa will request that the Court enter a permanent injunction barring Alpha's continued infringement and order Alpha to pay over its profits from infringing pursuant to 15 U.S.C. § 1117(a).  Alfa will also seek its attorney fees and litigation costs.

(b)     The Defendant

The Defendant denies each and every claim of Alfa Corp. under each theory of liability asserted.  It is Defendant's contention that Alfa Corp's claims alleging violations under the Lanham Act, as well as its supplemental state law claims, fail as a matter of law because it cannot prove a likelihood of confusion.

Alfa Corp sells insurance.  Alpha Warranty sells only Vehicle Service Contracts.  The parties have existed in 3 different states for a cumulative 38 years.  During these many years Alfa Corp and Alpha Warranty have co-existed in Alabama (11 years), Georgia (16 years), and Mississippi (11years), tens of thousands of car purchasers have obtained Alpha Warranty Vehicle Service Contracts through their selling dealer.  Yet, there is no evidence anyone ever has confused the parties' marks, and Alfa Corp concedes this point. Alfa Corp additionally concedes that it has no evidence or information that it has ever suffered damage from Alpha Warranty's sales of vehicle service contracts in Alabama, Georgia, and/or Mississippi.

The Lanham Act requires, at a minimum, that confusion, mistake, or deception be likely, not merely possible.  At trial, Alfa Corp may at best offer a speculative possibility that somehow, somewhere, some unsuspecting auto purchaser could conceivably consummate the purchase of an Alpha Warranty VSC under the mistaken impression that it is issued by Alfa Corp.  Yet there

7

is no evidence from which a reasonable fact-finder could conclude that an appreciable number of ordinarily prudent purchasers are likely to be confused. Alfa Corp's own expert witness admitted that with respect to the likelihood of confusion, it is only possible, describing it as a "non-zero chance."

Alfa Corp fails under each of the seven *Florida Int'l* factors. These factors - 1) strength of the allegedly infringed mark; 2) similarity of the alleged infringed mark and the alleged infringing mark; 3) similarity of the Goods and Services the Marks Represent; 4) similarity of the parties' trade channels and customers; 5) similarity of the advertising media used by the Parties; 6) lack of intent of the alleged infringer to misappropriate; and 7) no actual confusion – all favor Alpha Warranty. In fact, the last factor, which is by far the most important, weighs so heavily in favor of Alpha Warranty that judgment as a matter of law should be granted on this basis alone.

Alfa Corp's claims under the Lanham Act must fail under the doctrine of laches. While the Lanham Act does not contain a statute of limitations, the timeliness of a Lanham Act claim is measured by reference to the doctrine of laches. The Eleventh Circuit has concluded that the "touchstone for delay" under the doctrine of laches is measured by the limitations period for "analogous state law claims" in trademark cases. With respect to cases litigated in Alabama, the courts have chosen either a one-year or a two-year limitation, depending on the court's view as to the most relevant limitation under Alabama law, either the one-year limitation under the Alabama Deceptive Trade Practices Act or the residual two-year limitation of Alabama Code § 6-2-38(l) that would apply under the Alabama Trademark Act. Regardless of whether a one- or two-year statute applies, the doctrine of laches bars claims under the Lanham Act where: 1) the

8

plaintiff delayed asserting its rights; 2) the delay is not excusable; and 3) the defendant was unduly prejudiced by the delay.

Alfa Corp grossly delayed asserting its rights and the delay well exceeds even the most liberal statute of limitations. Alfa Corp received notice of Alpha Warranty's use of the Alpha Warranty Services mark in March of 2016 once Alpha Warranty filed its March 21, 2016 Trademark Application and did not file an opposition with the USPTO against the use of name Alpha Warranty Services. Even after the USPTO published the name Alpha Warranty Services for opposition on March 7, 2017, Alfa Corp never filed any opposition, letters, or complaint with the USPTO against the name Alpha Warranty Services at *any* time. Alfa Corp did not file this action with respect to the Alpha Warranty Services mark for four years and four months after it admitted awareness of its use.

Alfa Corp's delay is inexcusable given Alfa Corp's admitted awareness of Alpha Warranty's use of Alfa Warranty Services for the more than four-year period. Alfa Corp issued its first cease and desist letter to Alpha Warranty on October 14, 2016. The letter demanded a response by October 24, 2016. There was no response. Some twenty-six months following first notice, and twenty months after the first cease and desist, Alfa Corp issued a second cease and desist on May 14, 2018. After the May 14, 2018, second cease and desist was issued Alfa Corp sat on its rights for an additional two years and two and one-half months before filing suit. Four years and four months from admitted awareness of Alpha Warranty's use of its mark until the filing of suit and Alfa Corp offers no excuse for its delay.

Alpha Warranty has been prejudiced by Alfa Corp's delay. From 2016 - 2020, Alpha Warranty continued to grow its business, and spent more than $5,000,000 advertising and promoting its brand to auto dealers. This advertising expense is clear and apparent evidence of

9

the economic detriment suffered by Alpha Warranty due to Alfa Corp's delay in filing. Should Alpha Warranty be forced to rebrand its business at this point—after years of extensive advertising and brand management—it will lose much of its accrued goodwill and be forced to spend even greater sums on advertising in efforts to reclaim it.

Alfa Corp seeks to "prove" that Alpha Warranty has a poor reputation based upon a handful of online reviews. While this will be addressed in a Motion in Limine, if Alfa Corp is allowed to do so, Alpha Warranty looks forward to proving that its online reputation is far better than Alfa Corp's in every measurable category.

At trial, Alpha Warranty will ask for judgment as to all claims of Alfa Corp.

5.  **STIPULATIONS BY AND BETWEEN THE PARTIES:**

*Stipulations Related to Plaintiff Alfa*

1. Plaintiff Alfa is an Alabama-based company that provides insurance and financial services, among other products and services.

2. As part of its automobile insurance products and services, Alfa and its related companies offer liability, uninsured and underinsured motorist, medical payment, comprehensive and collision coverages. Alfa's automobile insurance offerings include coverage for roadside assistance (including providing mechanical assistance to vehicles), loss of income, loss of use, and travel costs.

3. Alfa's customer service representatives offer major mechanical insurance in conjunction with auto loans extended by Farm Bureau Bank ("FBB"). Major mechanical insurance covers certain mechanical breakdowns occurring in vehicles. FBB refers to the insurance as "Major Mechanical Protection" or MMP.

4. Alfa and its related companies also offer consumer mechanical breakdown products. For example, Alfa offers Alfa Home Systems Protection coverage, a product that covers the repair or replacement of important systems in a home due to mechanical or electrical failure.

5. Since 1987, Alfa and its related companies have done business under the mark "Alfa" and similar marks incorporating the mark "Alfa." The company is known, and customers, businesses and the consuming public generally refer to the company simply, as "Alfa."

6. In addition to its common law trademark rights, Alfa is the owner of various federally registered trademarks using the word "Alfa."

7. Alfa is the owner of U.S. Trademark Reg. No. 2088673 for the mark "Alfa Insurance" & Design:



8. The mark "Alfa Insurance" & Design is registered for "property and casualty insurance underwriting." The registration issued on August 19, 1997 and is valid, subsisting, and incontestable under 15 U.S.C. § 1065. Alfa has consistently used its "Alfa Insurance" & Design trademark since at least as early as May 1, 1987.

9. Alfa is the owner of U.S. Trademark Reg. No. 2671861 for the mark "Alfa Insurance" registered for "property and casualty insurance underwriting services." This registration issued on January 7, 2003 and is valid, subsisting, and incontestable under 15 U.S.C.

§ 1065.  Alfa has consistently used its "Alfa Insurance" trademark since at least as early as May 1, 1987.

10. Alfa is the owner of U.S. Trademark Reg. No. 3585068 for the mark "Alfa Insurance" registered for "reinsurance underwriting services and other reinsurance services, namely, reinsurance claims administration; processing, evaluation and subrogation; consultation in the field of reinsurance claims administration, processing, evaluation and subrogation-- life insurance services, namely, underwriting, administration, and claims administration services; annuities services, namely, annuity underwriting."  The registration issued on March 10, 2009 and is valid, subsisting, and incontestable under 15 U.S.C. § 1065.  Alfa has consistently used its "Alfa Insurance" trademark since at least as early as May 1, 1987.

11. Alfa is the owner of U.S. Trademark Reg. No. 3411261 for the mark "Alfa Insurance" & Design:



12. The mark "Alfa Insurance" & Design is registered for "reinsurance underwriting services and other reinsurance services, namely, reinsurance claims administration, processing, evaluation and subrogation; life insurance services, namely, underwriting, administration, and claims administration services; annuities services, namely, annuity underwriting."  The registration issued on April 15, 2008 and is valid, subsisting, and incontestable under 15 U.S.C. § 1065.  Alfa has consistently used its "Alfa Insurance" & Design trademark since at least as early as May 1, 1987.

13. Alfa is the owner of U.S. Trademark Reg. No. 3652904 for the mark "Alfa Financial" & Design:



14. The mark "Alfa Financial" & Design is registered for "financial services, namely, loan financing, mortgage lending, home equity loans, commercial loans, automobile loans and home improvement loans." The registration issued on July 14, 2009 and is valid, subsisting, and incontestable under 15 U.S.C. § 1065. Alfa has consistently used its "Alfa Financial" & Design trademark since at least as early as May 1, 1987.

15. Alfa is the owner of U.S. Trademark Reg. No. 3656202 for the mark "Alfa Financial" registered for "financial services, namely, loan financing, mortgage lending, home equity loans, commercial loans, automobile loans and home improvement loans." The registration issued on July 21, 2009 and is valid, subsisting, and incontestable under 15 U.S.C. § 1065. Alfa has consistently used its "Alfa Financial" trademark since at least as early as May 1, 1987.

16. Alfa is the owner of U.S. Trademark Reg. No. 4134051 for the mark "Alfa" registered for "insurance services, namely, underwriting, administration, claims processing and evaluation and claims administration services in the fields of life, automobile, property, dental and health insurance; property and casualty insurance underwriting, administration, and claims processing and evaluation services; insurance agencies in the fields of life, automobile, property,

dental and health insurance; reinsurance underwriting services, namely, claims administration, claims processing and claims evaluation; annuity services, namely, annuity underwriting, account and investment administration and evaluation; financial services, namely, loan financing, automobile loans and other unsecured loans; electronic insurance services, namely, underwriting, administration, claims processing, claims evaluation and claims administration services in the fields of life, automobile, property, dental and health insurance via a global computer network; property services, namely, managing and investing in residential and commercial properties." The registration issued on May 1, 2012 and is valid, subsisting, and incontestable under 15 U.S.C. § 1065. Alfa has consistently used its "Alfa" trademark since at least as early as May 1, 1987.

17. Alfa is the owner of U.S. Trademark Reg. No. 3570081 for the mark "Call Alfa" registered for "property and casualty insurance underwriting services; life insurance services, namely, underwriting, administration, and claims administration services; annuities services, namely, annuity underwriting." The registration issued on February 3, 2009 and is valid, subsisting, and incontestable under 15 U.S.C. § 1065. Alfa has consistently used its "Call Alfa" trademark since at least as early as June 1988. The following is an example of said use:



18. Alfa is the owner of U.S. Trademark Reg. Nos 3593528 and 3518699 for the marks "Call Alfa (Stylized)" trademarks:

19. The "Call Alfa (Stylized)" trademarks are registered for "life insurance services, namely, underwriting, administration, and claims administration services; annuities services, namely, annuity underwriting" and "property and casualty insurance underwriting services," respectively. The registrations issued on March 24, 2009 and October 21, 2008, respectively, and are valid, subsisting, and incontestable under 15 U.S.C. § 1065. Alfa has consistently used its "Call Alfa (Stylized)" trademarks since at least as early as June 1988.

20. Alfa is the owner of U.S. Trademarks Reg. Nos. 4392727, 4396595, and 4396594 for the mark "Alfa2Go" and "Alfa2Go" & Design, each registered for "downloadable software application for mobile devices and web-based systems for customers to remotely review, manage and administer insurance policies and claims." The registrations issued on August 27, 2013 and September 3, 2013 and are valid, subsisting, and incontestable under 15 U.S.C. § 1065. Alfa has consistently used its "Alfa2Go" trademark since at least as early as August 2010.

21. Alfa is the owner of U.S. Trademark Reg. No. 4034504 for the mark "My Alfa" registered for "online computer services providing customer information in the fields of insurance and annuity administration, evaluation, processing and claims administration and processing." The registration issued on October 4, 2011 and is valid, subsisting, and incontestable under 15 U.S.C. § 1065. Alfa has consistently used its "My Alfa" trademark since at least as early as August 2010.

*Stipulations Related to Defendant Alpha Warranty Services*

22. Defendant Alpha Warranty Services is a Utah-based company that provides "vehicle service contracts" ("VSCs") or "after-market warranties."

23. VSCs are contracts a consumer can purchase that will provide coverage if there are mechanical breakdowns of vehicle components.

24. On March 21, 2016, Alpha Warranty filed in the PTO U.S. Application Serial No. 86/947,576 to register the mark ALPHA WARRANTY SERVICES, for "Extended warranty services, namely, service contracts; Insurance services, namely, underwriting extended warranty contracts in the field of vehicles; Providing extended warranties on vehicles; Third-party extended warranty services, namely, vehicle service contracts on vehicles manufactured by others for mechanical breakdown and servicing," on the Principal Register. Alpha Warranty's application claimed a date of first use anywhere of September 5, 2004, and a date of first use in commerce of October 1, 2004.

25. On July 15, 2016, the PTO refused registration of Alpha Warranty's application based on a prior registration for ALPHA DISASTER SERVICES (U.S. Reg. No. 4457845) and two registrations owned by third parties. The PTO cited (among other things) two examples of insurance companies offering VSCs—USAA and Zurich.

26. On January 20, 2017, Alpha Warranty responded by limiting its description of services as shown by the stricken language below:

> Extended warranty services, namely, service contracts; ~~Insurance services, namely, underwriting extended warranty contracts in the field of vehicles;~~ Providing extended warranties on vehicles; Third-party extended warranty services, namely, vehicle service contracts on vehicles manufactured by others for mechanical breakdown and servicing.

27. Alpha Warranty also argued against the PTO's refusal, including by stating: "The Registrant [over which Alpha Warranty sought registration] is in the insurance business- specifically as Public Adjusters for insurance. [Alpha Warranty], on the other hand, is not in the insurance business whatsoever."

28. The PTO approved the mark for publication on February 15, 2017, and a registration for ALPHA WARRANTY SERVICES issued on May 23, 2017 as U.S. Reg. No. 5,207,495. The registration is not incontestable under 15 U.S.C. § 1065.

29. Vehicle warranties are frequently offered to consumers at the point of sale in an automobile purchase or leasing transaction when consumers are considering the purchase of automobile insurance.

30. On October 14, 2016, Alfa's counsel wrote to Alpha Warranty demanding that Alpha Warranty cease and desist from using the ALPHA mark. Alpha Warranty received this letter around the time it was sent. Alpha Warranty considered whether to respond to the letter, and Alpha Warranty chose not to do so. Alpha Warranty also did not cease using the ALPHA mark.

31. On May 14, 2018, Alfa's counsel again wrote to Alpha Warranty demanding that Alpha Warranty cease and desist from using the ALPHA mark, surrender Alpha Warranty's trademark registration for cancellation, and discontinue use of its internet domain. Alpha Warranty received this letter around the time it was sent. Alpha Warranty considered whether to respond to the letter, and Alpha Warranty chose not do so. Alpha Warranty also did not comply with any of Alfa's demands.

32. Alpha Warranty, incorporated in Utah in September 2004, is in the business of servicing vehicle service contracts, or VSCs.

33. Alpha Warranty now does business in all 50 states and has sold VSCs in Georgia since 2006, and Alabama and Mississippi since 2011.

34. As part of compliance for many states nationwide, Alpha Warranty is required to have contractual liability insurance (also called a CLIP), backing its VSCs.

35. This CLIP provides protection for the consumer in the event a third-party administrator such as Alpha Warranty becomes insolvent and unable to pay claims.

36. Alpha Warranty uses a third-party insurance underwriter, Assurant Solutions, to underwrite insurance (the CLIP) on its contracts.

37. In addition, through approval from Assurant Solutions, an auto dealer may have an opportunity to enter into a reinsurance system, but in such a scenario where a dealer is selling Alpha Warranty contracts using a reinsurance system, Alpha Warranty will arrange for the dealer to obtain the reinsurance from Assurant Solutions but does not issue the insurance.

38. Alfa Corp has been licensed as a property and casualty insurer by the Alabama Department of Insurance since 1955.

39. Alpha Warranty has been licensed to sell VSCs by the Alabama Department of Insurance since 2011.

***

It is ORDERED that:

(1) The jury selection and trial of this cause, which is to last five to seven days, are reset for September 11, 2023, at 10:00 a.m. at the United States Courthouse

18

in Montgomery, Alabama;

(2) A trial docket will be mailed to counsel for each party approximately two weeks prior to the start of the trial term;

(3) Each party shall have available at the time of trial, for use by the court (the judge, the courtroom deputy clerk, and the law clerk), three copies of the exhibit list and a sufficient number of copies of each photostatically reproducible exhibit for opposing counsel, the courtroom deputy clerk, the law clerk, the jurors, and the judge to each have a set of the exhibits;

(4) Trial briefs ((a) summarizing the evidence to be presented at trial, (b) setting forth the elements of each and every claim and defense at issue and how the evidence does or does not satisfy those elements, and (c) addressing any evidentiary issues that may arise at trial) are required to be filed by August 28, 2023;

(5) All deadlines not otherwise affected by this order will remain as set forth in the uniform scheduling order (Doc. 53, as modified) entered by the court on

October 8, 2021; and

(6) All understandings, agreements, deadlines, and stipulations contained in this pretrial order shall be binding on all parties unless this order be hereafter modified by order of the court.

DONE, this the 15th day of June, 2023.

                                              /s/ Myron H. Thompson
                                        **UNITED STATES DISTRICT JUDGE**